UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KRISTIN HARDY,

             Plaintiff,

    v.

C DAVIS, et al.,

            Defendants.

No.  2:13-cv-0726 JAM DB

FINDINGS AND RECOMMENDATIONS

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action under 42 U.S.C. § 1983 alleging he was unreasonably strip-searched and subjected to excessive force, in violation of his Fourth and Eighth Amendment rights.  Before the court are the parties' cross-motions for summary judgment.  (ECF Nos. 83; 84.)  Plaintiff moves for summary judgment against all defendants on his Fourth Amendment claims alleging an unreasonable strip search conducted by defendants Morris and Zahniser and set in motion by defendant Davis.  (ECF No. 83.)

Defendants move for summary judgment on both the Fourth and Eighth Amendment claims.  For the reasons outlined below, the undersigned respectfully recommends that plaintiff's motion for partial summary judgment (ECF No. 83) be denied and defendants' motion for summary judgment (ECF No. 84) be granted in part and denied in part.

////

1

## I.     Background

### A.     Procedural

Plaintiff is currently proceeding on his first amended complaint.  (ECF No. 52.)  After the close of discovery and less than three weeks before the deadline for filing dispositive motions,[1] plaintiff filed a motion for leave to amend his complaint.  (ECF No. 81.)  Defendants oppose that motion. (ECF No. 86.)  The undersigned will address the motion to amend by way of separate order.  However, in the motion for leave to amend, plaintiff voluntarily dismisses his claim for deliberate indifference/failure to protect against defendant Davis.  (ECF No. 81 at 1.)  So, while the court will enter a separate order and findings and recommendations concerning the motion for leave to amend, it will accept plaintiff's voluntary dismissal of the deliberate indifference claim against defendant Davis and thus not address that issue in these recommendations.

Plaintiff has filed a motion for partial summary judgment against all defendants solely on his Fourth Amendment claim that he was unreasonably strip searched.  (ECF No. 83.) Defendants oppose that motion (ECF No. 90) and move for summary judgment (ECF No. 84) on all claims.  Plaintiff opposes defendants' motion for summary judgment.  (ECF No. 92.) Defendants filed a reply in support of their motion.  (ECF No. 95.)  All of these motions are now ripe for review.

### B.     Factual

On July 17, 2012, plaintiff was summoned from his housing unit to go to the C-Facility law library at High Desert State Prison (HDSP) to conduct legal research.[2]  It is HDSP policy that inmates entering and exiting the law library receive a clothed body search, or "pat-down" search. The purpose of these searches is to prevent the spread of contraband materials that inmates may bring into the library and then smuggle it into other yards or housing units.  When plaintiff arrived at the law library, he was given a pat-down search.  Once inside the law library, plaintiff

---

[1]  Discovery closed on February 12, 2016 and the dispositive motions deadline was May 6, 2016. (ECF No. 56.)

[2]  The factual background is derived from the parties' statements of undisputed facts, oppositions to the statements of undisputed facts, and the allegations in plaintiff's first and second amended complaints.  (ECF Nos. 52; 82; 83 at 2-3; 84-3; 90-1; 90-2; 93.)

1    signed in and conducted legal research until 10:00 a.m.  At that time, Defendant Davis ordered all

2    the inmates in the library to sign-out.  After the inmates signed out, they lined up at the door to

3    exit the law library.

4         As the inmates lined up, a correctional officer in an observation tower across the patio

5    where the law library was located yelled, "Get down!" which meant that a Code 1 alarm was

6    going off somewhere in the prison.  A Code 1 alarm for C-Yard No. 1 was announced via HDSP

7    institutional radio.  Several correctional officers, including defendants Morris and Zahniser,

8    responded to the alarm to deal with several inmates who were fighting each other.

9         Meanwhile, inside the law library, defendant Davis ordered all the inmates to sit down.  It

10   is CDCR policy that when an alarm goes off, defendant Davis must instruct the inmates who are

11   in the law library to sit down immediately.  Additionally, all non-custody staff must exit the

12   building they are in whenever an alarm code goes off.  Defendant Davis is "non-custody staff;"

13   she carries no weapon and has no means to defend herself in the event of an inmate attack.  In

14   order for defendant Davis to exit the law library though, all the inmates must be sitting down.

15        It is undisputed that plaintiff sat down in the law library during the alarm.  However, the

16   parties dispute whether defendant Davis was required to instruct plaintiff several times to sit

17   down and whether plaintiff took a long time to do so.  Once all of the inmates sat down,

18   defendant Davis exited the law library and closed the door behind her.  Outside of the law library,

19   defendant Davis told Correctional Sergeant D. Dittman that she was dealing with an inmate who

20   was refusing to sit down during an alarm and requested that Dittman send custody staff to

21   verbally counsel plaintiff on proper procedure.

22        While responding to the alarm in C-Yard No. 1, defendant Morris performed an unclothed

23   body search on one of the inmate combatants to look for contraband.  After the alarm was cleared,

24   defendants Morris and Zahniser approached the law library where Sergeant Dittman and

25   defendant Davis informed them that plaintiff was refusing to sit during the alarm and that he

26   required verbal counseling.

27   ////

28   ////

3

1    Defendants Morris and Zahniser entered the law library and asked plaintiff to step outside

2    with them.  Plaintiff complied and exited the law library with defendants Morris and Zahniser.

3    Outside the law library, defendants Morris and Zahniser talked to plaintiff in the presence of

4    Sergeant Dittman.  The parties dispute the contents of the initial conversation; plaintiff claims that

5    a demand for a strip search was made immediately by defendants, while defendant Morris and

6    Sergeant Dittman claim that defendant Morris initially tried to verbally counsel plaintiff

7    concerning the alleged incident in the library.  Defendant Zahniser claims that a clothed body

8    search was immediately ordered, making no mention of efforts to counsel plaintiff.  Defendants

9    also contend that plaintiff was argumentative and questioned why he was escorted out of the law

10   library, although, plaintiff disagrees with that statement.

11   Ultimately, during the exchange outside of the law library, defendants Morris and

12   Zahniser ordered that plaintiff submit to a visual strip search in front of the law library.  Plaintiff

13   demanded the reasons why he was being strip searched.  During this exchange, plaintiff

14   eventually laid face down on the ground.  Plaintiff claims he did this in reaction to threats from

15   defendants and other corrections officers, while defendants Morris and Zahniser and Sergeant

16   Dittman claim plaintiff laid prone in resistance to the strip search order.  Defendants Morris and

17   Zahniser then handcuffed plaintiff, lifted him off the ground, and escorted him to the C-Facility

18   program office to conduct the strip search.  Plaintiff claims that defendants Morris and Zahniser

19   drove their knees into his back and roughly picked him up off the ground.  Defendants dispute

20   this allegation.

21   Once inside the program office, plaintiff was placed inside an individual holding cell

22   where defendant Morris conducted the strip search.  Plaintiff's handcuffs were removed and

23   plaintiff subsequently removed his clothing.  Plaintiff passed his clothing to defendant Morris,

24   who then conducted the search by ordering plaintiff to turn around so defendant Morris could

25   visually inspect plaintiff's back, buttocks, thighs, toes, and bottom of the feet.  Defendant Morris

26   then inspected plaintiff's anal area by ordering plaintiff to bend over, spread their buttocks, and

27   cough.  Once the search was completed, defendant Morris handed plaintiff his clothes.  After that,

28   ////

1   plaintiff got dressed and returned to his housing unit.  No contraband was found on plaintiff's

2   body.

3          According to plaintiff's Unit Health Record, on July 19, 2012, two days after the strip

4   search incident, plaintiff was observed by HDSP medical staff walking with his right arm hanging

5   loosely with no visible tensing or apparent complications, swinging easily as he walked.  Plaintiff

6   described his pain as five out of ten on the pain scale, but when nursing staff attempted to touch

7   his arm, he screamed.  When medical staff attempted to touch plaintiff's arm, he held his arm up

8   with his elbow, wrist, and hand at a "strange angle," tensing up to the point that medical staff

9   could not assess his range of motion.  Plaintiff's right wrist and arm were noted to be normal with

10  no visible swelling, deformities, or bruising.  Plaintiff received an x-ray on his right wrist and no

11  fractures were present.  The doctor prescribed plaintiff Tylenol and issued him a 10-day lay-in.

12  On July 25, 2012, plaintiff stated that his right hand and wrist improved, and there was no

13  decreased flexion in the right hand or wrist.

14  **II.     <u>Summary Judgment Legal Standard</u>**

15         Summary judgment is appropriate when there is "no genuine dispute as to any material

16  fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary

17  judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant

18  to the determination of the issues in the case, or in which there is insufficient evidence for a jury

19  to determine those facts in favor of the nonmovant.  <u>Crawford–El v. Britton</u>, 523 U.S. 574, 600

20  (1998); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-50 (1986); <u>Nw. Motorcycle Ass'n v.

21  U.S. Dep't of Agric.</u>, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment

22  motion asks whether the evidence presents a sufficient disagreement to require submission to a

23  jury.

24         The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

25  or defenses.  <u>Celotex Cop. v. Catrett</u>, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to

26  "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

27  trial.'"  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)

28  (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally,

1     under summary judgment practice, the moving party bears the initial responsibility of presenting

2     the basis for its motion and identifying those portions of the record, together with affidavits, if

3     any, that it believes demonstrate the absence of a genuine issue of material fact.  Celotex, 477

4     U.S. at 323; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving

5     party meets its burden with a properly supported motion, the burden then shifts to the opposing

6     party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e);

7     Anderson, 477 U.S. at 248; Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995).

8        A clear focus on where the burden of proof lies as to the factual issue in question is crucial

9     to summary judgment procedures.  Depending on which party bears that burden, the party seeking

10    summary judgment does not necessarily need to submit any evidence of its own.  When the

11    opposing party would have the burden of proof on a dispositive issue at trial, the moving party

12    need not produce evidence which negates the opponent's claim.  See e.g., Lujan v. National

13    Wildlife Fed'n, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters

14    which demonstrate the absence of a genuine material factual issue.  See Celotex, 477 U .S. at 323-

15    24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a

16    summary judgment motion may properly be made in reliance solely on the 'pleadings,

17    depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment

18    should be entered, after adequate time for discovery and upon motion, against a party who fails to

19    make a showing sufficient to establish the existence of an element essential to that party's case,

20    and on which that party will bear the burden of proof at trial.  See id. at 322.  In such a

21    circumstance, summary judgment must be granted, "so long as whatever is before the district

22    court demonstrates that the standard for entry of summary judgment . . . is satisfied."  Id. at 323.

23        To defeat summary judgment the opposing party must establish a genuine dispute as to a

24    material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s) that

25    is material, i.e., one that makes a difference in the outcome of the case.  Anderson, 477 U.S. at

26    248 ("Only disputes over facts that might affect the outcome of the suit under the governing law

27    will properly preclude the entry of summary judgment.").  Whether a factual dispute is material is

28    determined by the substantive law applicable for the claim in question.  Id.  If the opposing party

1  is unable to produce evidence sufficient to establish a required element of its claim that party fails

2  in opposing summary judgment.  "[A] complete failure of proof concerning an essential element

3  of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex, 477 U.S.

4  at 322.

5          Second, the dispute must be genuine.  In determining whether a factual dispute is genuine

6  the court must again focus on which party bears the burden of proof on the factual issue in

7  question.  Where the party opposing summary judgment would bear the burden of proof at trial on

8  the factual issue in dispute, that party must produce evidence sufficient to support its factual

9  claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.

10 Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Rather, the opposing party must, by affidavit

11 or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

12 for trial.  Anderson, 477 U.S. at 249; Devereaux, 263 F.3d at 1076.  More significantly, to

13 demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

14 that a fair-minded jury "could return a verdict for [him] on the evidence presented."  Anderson,

15 477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

16         The court does not determine witness credibility.  It believes the opposing party's

17 evidence, and draws inferences most favorably for the opposing party.  See id. at 249, 255;

18 Matsushita, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the

19 proponent must adduce evidence of a factual predicate from which to draw inferences.  American

20 Int'l Group, Inc. v. American Int'l Bank, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J.,

21 dissenting) (citing Celotex, 477 U.S. at 322).  If reasonable minds could differ on material facts at

22 issue, summary judgment is inappropriate.  See Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th

23 Cir. 1995).  On the other hand, "[w]here the record taken as a whole could not lead a rational trier

24 of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S.

25 at 587 (citation omitted); Celotex, 477 U.S. at 323 (if the evidence presented and any reasonable

26 inferences that might be drawn from it could not support a judgment in favor of the opposing

27 party, there is no genuine issue).  Thus, Rule 56 serves to screen cases lacking any genuine

28 dispute over an issue that is determinative of the outcome of the case.

1    Defendants' motion for summary judgment included a so-called "Rand notice" (ECF No.

2    84-2) to plaintiff informing him of the requirements for opposing a motion pursuant to Rule 56 of

3    the Federal Rules of Civil Procedure.  See Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v.

4    Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999);

5    Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

6    **III.    Legal Analysis**

7         **A.       Fourth Amendment Claim Against Defendant Davis**

8         As the court noted above, plaintiff's partial motion for summary judgment only addresses

9    the fourth amendment claims against defendants.  (ECF No. 83.)  Defendant Davis also moves for

10   summary judgment concerning the Fourth Amendment claim against her.  For the reasons stated

11   below, the undersigned recommends denial of plaintiff's motion and granting of defendant Davis'

12   motion concerning the Fourth Amendment claim.

13        For purposes of the Fourth Amendment, searches of prisoners must be reasonable to be

14   constitutional.  Nunez v. Duncan, 591 F.3d 1217, 1227 (9th Cir. 2010).  Strip searches that are

15   excessive, vindictive, harassing, or unrelated to any legitimate penological interest are not

16   reasonable.  Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir.1988).  "The test of

17   reasonableness under the Fourth Amendment is not capable of precise definition or mechanical

18   application.  In each case it requires a balancing of the need for the particular search against the

19   invasion of personal rights that the search entails. Courts must consider the scope of the particular

20   intrusion, the manner in which it is conducted, the justification for initiating it, and the place in

21   which it is conducted."  Id. (citing Bell v. Wolfish, 441 U.S. 520, 559 (1979)).

22        Concerning defendant Davis' alleged role in plaintiff's strip search, the parties dispute

23   whether defendant Davis set the process in motion.  Plaintiff accuses defendant Davis of enlisting

24   defendants Morris and Zahniser to strip search him without cause.  (ECF Nos. 52 at 8; 82 at 10.)

25   However, this claim is pure speculation.  All evidence presented to the court with the summary

26   judgment motion briefing demonstrates that defendant Davis enlisted defendants Morris and

27   Zahniser to "verbally counsel" plaintiff concerning the importance of following instructions

28   during an alarm.

8

The declarations submitted by Sergeant Dittman and defendant Davis state that defendant Davis requested that custody staff "verbally counsel" plaintiff on proper procedure.  (ECF Nos. 84-4 at ¶¶ 9-11; 84-7 at ¶ 4.)  The declarations of defendants Morris and Zahniser state that defendant Davis and Sergeant Dittman enlisted them to address an inmate who purportedly did not follow instructions during the alarm.  (ECF Nos. 84-5 at ¶ 3; 84-6 at ¶ 3.)  These are the only declarations available of individuals who were privy to the communications between defendant Davis and defendants Morris and Zahniser.  None of these declarations demonstrate that defendant Davis instructed the other defendants to conduct a strip search, hinted at the conducting of a strip search, or any way referenced a strip search.  (See ECF Nos. 84-4 at ¶¶ 9-11; 84-5 at ¶ 3; 84-6 at ¶ 3; 84-7 at ¶ 4.)

Plaintiff's allegations that defendant Davis prompted the purportedly unreasonable strip search is pure speculation, unsupported by any facts.  Thus, the only evidence for the court to consider concerning this issue is the four consistent declarations of the staff members present for the communications at issue.

Conclusory allegations, unsupported by evidence are insufficient to defeat a motion for summary judgment.  Taylor, 880 F.2d at 1045.  A party opposing summary judgment must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial.  Anderson, 477 U.S. at 249; Devereaux, 263 F.3d at 1076.  While plaintiff disputes defendants' declarations, a mere dispute with nothing more is insufficient; to demonstrate a genuine factual dispute, plaintiff must rely on actual evidence that a fair-minded jury "could return a verdict for [him] on the evidence presented."  Anderson, 477 U.S. at 248, 252.  Plaintiff's naked assertion about the contents of a conversation he admits to not being present for does not constitute evidence that a fact finder could reasonably rely upon to reach a verdict.

Furthermore, while inferences are favorably drawn for the opposing party, Matsushita, 475 U.S. at 587, these inferences are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences, American Int'l Group, Inc., 926 F.2d at 836 (citing Celotex, 477 U.S. at 322).  Plaintiff's allegation that defendant Davis orchestrated his strip search by defendants Morris and Zahniser is not supported by the evidence

1    presented to the court; nor can the court draw a favorable inference for the plaintiff.

2         Accordingly, the undersigned recommends that defendant Davis' motion for summary

3    judgment be granted and plaintiff's motion for summary judgment be denied as to the Fourth

4    Amendment claims against defendant Davis.

5              **B.    Eighth Amendment Claim Against Defendant Davis**

6         As with the Fourth Amendment claim, plaintiff alleges that defendant Davis set in motion

7    a series of acts by others that she knew, or reasonably should have known, would result in

8    excessive force against plaintiff.  (ECF Nos. 52 at 8; 82 at 10.)  For the same reasons as the

9    Fourth Amendment claim, defendant Davis' motion for summary judgment concerning the Eighth

10   Amendment claim must also be denied.

11        The parties dispute whether defendant Davis set the process in motion for excessive force

12   to be applied to plaintiff.  As with the Fourth Amendment claim, plaintiff accuses defendant

13   Davis of enlisting defendants Morris and Zahniser to use excessive force against him.  (ECF Nos.

14   52 at 8; 82 at 10.)  However, this claim is also pure speculation.  All evidence presented with the

15   summary judgment briefing demonstrates that defendant Davis enlisted defendants Morris and

16   Zahniser to "verbally counsel" plaintiff concerning the importance of following instructions

17   during an alarm.  No evidence is presented that anything more than that was under consideration

18   by any defendant.

19        The declarations submitted by Sergeant Dittman and defendant Davis state that defendant

20   Davis requested that custody staff "verbally counsel" plaintiff on proper procedure.  (ECF Nos.

21   84-4 at ¶¶ 9-11; 84-7 at ¶ 4.)  The declarations of defendants Morris and Zahniser state that

22   defendant Davis and Sergeant Dittman enlisted them to address an inmate who purportedly did

23   not follow instructions during the alarm.  (ECF Nos. 84-5 at ¶ 3; 84-6 at ¶ 3.)  These are the only

24   declarations of individuals who were privy to the communications between defendant Davis and

25   defendants Morris and Zahniser.  None of these declarations demonstrate that defendant Davis

26   instructed the other defendants to treat plaintiff roughly, hinted at treating plaintiff roughly, or

27   any way referenced the use of violence against plaintiff.  (See ECF Nos. 84-4 at ¶¶ 9-11; 84-5 at ¶

28   3; 84-6 at ¶ 3; 84-7 at ¶ 4.)  Furthermore, no evidence is presented that defendant Davis routinely

1   enlisted custody staff to counsel inmates in a way that regularly led to injury, such that this court

2   could logically infer that she might have had reason to know that a battery in violation of the

3   Eighth Amendment was likely to occur.

4        While plaintiff disputes defendants' declarations, a mere dispute with nothing more is

5   insufficient; in order to demonstrate a genuine factual dispute, plaintiff must rely on actual

6   evidence that a fair-minded jury "could return a verdict for [him] on the evidence presented."

7   Anderson, 477 U.S. at 248, 252.  Plaintiff's unsupported allegation about the communications

8   between defendant Davis and defendants Morris and Zahniser does not constitute evidence that a

9   fact finder could reasonably rely upon to reach a verdict.

10        Accordingly, the undersigned recommends that defendant Davis' motion for summary

11   judgment be granted as to the Eighth Amendment claims against defendant Davis.

12        **C.    Fourth Amendment Claims Against Defendants Morris and Zahniser**

13        As with the Fourth Amendment claim against defendant Davis, plaintiff also filed for

14   partial summary judgment concerning his Fourth Amendment claims against defendants Morris

15   and Zahniser.  (ECF No. 83.)  Defendants Morris and Zahniser moved for summary judgment on

16   these claims as well.  (ECF No. 84.)  As set forth below, the undersigned recommends denying

17   both motions concerning these claims.

18        Turner v. Safley, 482 U.S. 78 (1987), provides the standard for reviewing alleged

19   infringements of prisoners' constitutional rights.  See also Washington v. Harper, 494 U.S. 210,

20   224 (1990) (stating that Turner applies whenever "the needs of prison administration implicate

21   constitutional rights"); Michenfelder, 860 F.2d at 331 (applying the Turner standard to prisoners'

22   allegations of Fourth Amendment violations).  Turner provides that "when a prison regulation

23   impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to

24   legitimate penological interests."  Turner, 482 U.S. at 89.

25        Searches of prisoners must be reasonable to be constitutional.  See Michenfelder, 860 F.2d

26   at 332.  The reasonableness of a particular search of a prisoner is determined by applying the

27   balancing test the Supreme Court announced in Bell.  See Michenfelder, 860 F.2d at 332. In Bell,

28   the court wrote:

The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

441 U.S. at 559 (emphasis added).

In Fourth Amendment cases, "[a]n action is 'reasonable' . . . regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, justify [the] action.'" Brigham City, Utah v. Stuart, 547 U.S. 398, 404, (2006) (quoting Scott v. United States, 436 U.S. 128, 138 (1978)); see also Nunez, 591 F.3d at 1228. So, while defendants are correct in asserting that any evidence concerning their subjective intent is irrelevant, that does not end the court's inquiry. See Nunez, 591 F.3d at 1228. The issue here is whether the search was "excessive, vindictive, harassing, and unrelated to any legitimate penological interest." See Michenfelder, 860 F.2d at 332.

Based upon the facts in the record before this court, there are still genuine issues of fact as to whether the circumstances faced by defendants Morris and Zahniser justified their search.

### 1.    Scope and Manner

The scope of intrusion associated with strip searches has been described as a "'frightening and humiliating' invasion, even when conducted 'with all due courtesy.'" Way v. Cty. of Ventura, 445 F.3d 1157, 1160 (9th Cir. 2006) (quoting Giles v. Ackerman, 746 F.2d 614, 617 (9th Cir. 1984)). Its intrusiveness "cannot be overstated." Kennedy v. Los Angeles Police Dept., 901 F.2d 702, 711; see also Kirkpatrick v. City of Los Angeles, 803 F.2d 485, 489-90 (9th Cir. 1986) ("[T]he fact that a strip search is conducted reasonably, without touching and outside the view of all persons other than the party performing the search, does not negate the fact that a strip search is a significant intrusion on the person searched[.]" (citation omitted)); Thompson v. City of Los Angeles, 885 F.2d 1439, 1446 (9th Cir. 1989) ("The feelings of humiliation and degradation associated with forcibly exposing one's nude body to strangers for visual inspection is beyond dispute.").

////

12

The parties agree that the search took place in a holding cell, behind closed doors, with no one present but plaintiff and defendants Morris and Zahniser.  There is also no issue about how it was conducted.  See supra page 4.  Thus, this leaves the question of whether the intrusion was justified.

2.    Justification

So long as a prisoner is presented with the opportunity to obtain contraband or a weapon while outside of his cell, a visual strip search may have a legitimate penological purpose.  Turner, 483 U.S. at 88-89.  Plaintiff bears the burden of showing that prison officials used exaggerated or excessive means to enforce security.  See Michenfelder, 860 F.2d at 332; Soto v. Dickey, 744 F.2d 1260, 1271 (7th Cir. 1984); Bell, 441 U.S. at 561-62.

Defendants claim that the strip search was justified to maintain prison security and was initiated to prevent the spread of contraband.  (ECF No. 84-1 at 14.)  Because law libraries are locations where inmates congregate from different yards, defendants assert that contraband may be exchanged there and, if not discovered, can be carried back to other housing units.  (Id.) Defendant Davis attested to this as the justification for the **clothed** pat-downs of inmates as they enter and exit the library.  (ECF No. 84-4 at 2.)  Defendants' affidavits (as well as the affidavit of Sergeant Dittman) do not use this justification for the strip search of plaintiff.  (See ECF Nos. 84-5; 84-6; 84-7.)  Nor do defendants allude to any statistics concerning contraband in the library and strip searches of inmates -- i.e., what is the basis of the belief that contraband will be exchanged in this library, how frequently are strip searches engaged in, how effective are the strip searches, and how often do the clothed pat-downs lead to the discovery of contraband.

Defendants Morris and Zahniser phrase their justifications for the strip search of plaintiff differently.  Defendant Morris claims that "[u]sually when an inmate refuses to comply during an alarm, he either has something to hide or is doing something wrong."  (ECF No. 84-5 at 2.) Because he had strip searched another inmate who had been involved in a fight -- in a completely unrelated incident in a different location -- minutes before, defendant Morris states that his concern about contraband was elevated, necessitating a strip search of plaintiff.  (Id.)  Defendant Zahniser asserts that once defendants stepped outside of the library with plaintiff, they first

13

1    ordered plaintiff to submit to a clothed pat-down search.  (ECF No. 84-6 at 2.)  It was upon

2    plaintiff's purported refusal to submit to a clothed search that prompted defendants to order an

3    unclothed search.  (Id.)  This order for a clothed body search is not in defendant Morris'

4    declaration (ECF No. 84-5) and is denied as false by plaintiff (ECF No. 93 at 3).

5         Thus, the only consistent and uncontested justifications presented for the strip search in

6    this matter are that plaintiff was in a common area where he had the opportunity to interact with

7    inmates from other yards.  Offered as further justification is defendant Morris' contention that

8    inmates who do not comply with an alarm usually are hiding something.

9         In Michenfelder and Campbell v. Miller, circuit courts of appeal approved of policies that

10   mandated strip searches of high-risk inmates when coming and going from certain areas where

11   they interacted with other inmates.  Michenfelder, 860 F.2d at 332; Campbell, 787 F.2d at 227-28.

12   In Campbell, the area in question was also the prison law library.  Campbell, 787 F.2d at 227-28.

13   However, in both of those cases, the inmates subject to a policy of routine strip searches were

14   **high-risk**.  The plaintiff in Campbell was detained in the highest level federal maximum security

15   prison and the plaintiff in Michenfelder was held in the "maximum security unit for the state's 40

16   most dangerous prisoners."  Michenfelder, 860 F.2d at 330; Campbell, 787 F.2d at 227-28.

17        Defendants do not contend that strip searches of inmates entering and exiting the law

18   library is a routine activity in the present case.[3]  Nor do defendants contend that plaintiff was an

19   especially dangerous inmate, or that he was housed in a particular high-security unit, or that he

20   had interacted with prisoners from a particular high-security unit.  So, while the Ninth and

21   Seventh Circuits both concluded that when a prisoner is presented with the opportunity to obtain

22   contraband or a weapon outside of his cell, a visual strip search serves a legitimate penological

23   purpose, those courts were presented with a different context than the one here, at least with

24   regard to the facts presented on the record so far.

25        Additionally, in Michenfelder, the Ninth Circuit relied partially upon the fact that the

26   specific unit where the search took place housed the state's most difficult prisoners.  860 F.3d at

27

28
     [3]  As noted above, clothed pat-downs of the inmates on their way into and out of the law library
     was standard procedure.  (ECF No. 84-4 at 2.)

333.  The Ninth Circuit noted that "testimony and physical evidence before the district court substantiated several incidents in which contraband and homemade weapons were confiscated from . . . inmates."  Id.  Here, defendants present only generalized speculation about the possibility of contraband exchanging hands in the library.  (See ECF No. 84-4 at 2.)  Defendants present no evidence that the situation at HDSP's law library is any way comparable to the situations in Campbell and Michenfelder, where the prisons involved housed the most dangerous prisoners in their respective systems.

Defendants Morris and Zahniser attempt to further bolster their justification of the strip search by claiming that plaintiff's refusal to submit to an unclothed body search only heightened their suspicion that plaintiff possessed contraband.  (ECF Nos. 84-1 at 14; 84-6 at 2.)  However, this backwards logic requires the court to accept that the justification for the search came **after** defendants ordered the search.  As defendants state in their own briefing, "a search is justified at its inception, not its end result."  (ECF No. 84-1 at 14.)

The facts presented here demonstrate sufficient conflict concerning justification so as to weigh in favor of denying summary judgment for both parties.

### 3.   Place

According to defendants' admissions, the original intention was to strip search plaintiff on the patio in front of the law library.  (ECF No. 84-6 at 2.)  It was upon defendants' initial request for this public strip search that plaintiff first questioned their motivations -- and also, at which point defendants allegedly began to suspect that plaintiff may be carrying contraband.

However, the court's concern is not with where the search **almost** occurred, only where it actually occurred.  See Bell, 441 U.S. at 559.  In this instance, defendants took plaintiff to a more private area to conduct the search.  In Rickman v. Avaniti, 854 F.2d 327, 328-29 (9th Cir. 1988), the fact that visual strip searches were conducted in the privacy of an inmate's cell was a factor in determining their reasonableness.  In Thompson v. Sousa, 111 F.3d 694 (9th Cir. 1997), the Ninth Circuit upheld correctional officers' visual strip search of an inmate that was conducted on a housing tier in full view of several jeering inmates.  The search at issue here occurred in a private holding cell in the C-Facility program office.

15

While it is possible that a passing inmate could have momentarily viewed plaintiff during the search, the location of the search was the closest semi-private area near the patio in front of the law library.  As the Ninth Circuit held in <u>Rickman</u> and <u>Thompson</u>, absolute privacy during strip searches is hardly a guarantee.  If defendants Morris and Zahniser were justified in subjecting plaintiff to a search (i.e., if there was a legitimate penological purpose, such as a search for contraband), then conducting the search in a relatively private area in the immediate vicinity of the encounter would be reasonable.

Accordingly, this factor weighs in favor of defendants' motion.

### 4.   Conclusion

Ultimately, the facts on the record do not justify summary judgment for either party. Defendants' claims of suspicious and insubordinate behavior by plaintiff are not fully consistent across the record, in addition to being contested by plaintiff in his own sworn statements and court filings.  Plaintiff's assertions that he was, at all times, compliant and that the search was conducted for purely non-penological purposes is contested by statements on the record, even if those statements are not always consistent.  Thus, these "contradiction[s] present[] a classic swearing match, which is the stuff of which jury trials are made."  <u>Feliciano v. City of Miami Beach</u>, 707 F.3d 1244, 1253 (11th Cir. 2013).  Accordingly, the undersigned recommends that both motions for summary judgment be denied as to plaintiff's Fourth Amendment claims against defendants Morris and Zahniser.

### D.   <u>Eighth Amendment Claims Against Defendants Morris and Zahniser</u>

A correctional officer's use of force is not excessive under the Eighth Amendment if it is applied in a good faith effort to restore discipline and order and "not maliciously and sadistically for the very purpose of causing harm."  <u>Whitley v. Albers</u>, 475 U.S. 312, 320-21 (1986); <u>Hudson v. McMillian</u>, 503 U.S. 1, 7 (1992).

Plaintiff claims that when he stood in front of defendants outside the law library, he dove to the ground because he feared for his safety.  (ECF No. 52 at 6.)  Defendants then purportedly jumped on his back, dug their knees into his body, and placed him in handcuffs.  (<u>Id.</u>)  After yelling and cursing at him, defendants "roughly lifted Plaintiff of[f] the ground and while in

16

1   handcuffs, [they] [w]renched Plaintiff's wrist in an upward motion [causing] Plaintiff to cry out in

2   pain." (Id.)  Plaintiff's accusations are supported only by his own sworn statement and court

3   filings.  As described by all other witnesses present, plaintiff was argumentative and

4   noncompliant with instructions, which led to him diving to the ground in resistance to the officers

5   necessitating the use of handcuffs and lifting of plaintiff from the ground.  (ECF Nos. 84-5 at 2;

6   84-6 at 2; 84-7 at 2-3.)

7       The mere existence of some alleged factual dispute between the parties will not defeat a

8   properly supported motion for summary judgment.  Anderson, 477 U.S. at 247-48.  The

9   requirement is that there is no **genuine** dispute of material fact.  Id.   Where opposing parties tell

10  two different stories, one of which is "blatantly contradicted" by the record so that no reasonable

11  jury could believe it, the court should not adopt that version of the facts.  Scott v. Harris, 550 U.S.

12  372, 380 (2007).

13      While the Fourth Amendment claims against defendants Morris and Zahniser were

14  supported by inconsistent and inconclusive evidence concerning the basis of the strip search, the

15  evidence on the record concerning the excessive force claims consistently and blatantly

16  contradicts plaintiff's allegations.

17      The record is clear that words were exchanged between plaintiff and defendants before

18  plaintiff dove to the ground.  Whether plaintiff dove to the ground out of fear (as he claims) or

19  resistance (as the officers claim), the uncontroverted facts are that he dove to ground and

20  remained there while defendants and Morris and Zahniser were ordering him to submit to a strip

21  search.  (ECF Nos. 84-5 at 2; 84-6 at 2; 84-7 at 2-3.)  Correctional officers may apply reasonable

22  force in a good faith effort to restore discipline and order.  Whitley, 475 U.S. at 320-21; Hudson,

23  503 U.S. at 7.  Defendants Morris and Zahniser, as well as Sergeant Dittman, all declare in sworn

24  statements that defendants Morris and Zahniser put handcuffs on plaintiff while he was on the

25  ground and lifted him up.  (ECF Nos. 84-5 at 2; 84-6 at 2; 84-7 at 2-3.)

26      Plaintiff describes these actions as being unnecessarily rough, including defendants

27  jamming their knees into his back and wrenching his wrist so as to cause pain.  Other than his

28  conclusory allegations about the excessiveness of this force, plaintiff puts forth no other evidence

17

1   to support his claims that excessive force was applied to him.  In addition to defendants'

2   declarations and the declaration of the only non-party witness at the scene of the encounter

3   (Sergeant Dittman), defendants also submitted the declaration of the physician who treated

4   plaintiff for his alleged wrist injury, Dr. Mayes.  (ECF No. 84-8.)

5          Dr. Mayes attests that he treated plaintiff for wrist pain two days after the incident.  (Id. at

6   2.)  The nursing staff at HDSP observed plaintiff walking with his injured arm hanging loosely

7   with no visible tensing or apparent complications, swinging easily as he walked.  (Id.)  Despite

8   plaintiff's claims of pain, Dr. Mayes noted that the wrist and arm were normal with no visible

9   swelling, deformities, or bruising.  (Id.)  Furthermore, a precautionary x-ray revealed no fracture

10  to the hand or wrist.  (Id. at 2-3.)  The only issue that Dr. Mayes observed with plaintiff's hand

11  was minor decreased flexion of the right hand and fingers.  (Id. at 2.)  This was not observed

12  again during plaintiff's follow-up visit five days later.  (Id. at 3.)

13         Plaintiff's description of the incident and his level of injury is contradicted by the record,

14  such that the court cannot credit his testimony.  "[A]n adverse party may not rest upon the mere

15  allegations or denials of [her] pleadings." Fed. R. Civ. P. 56(e).  While plaintiff submits his own

16  sworn statement (ECF No. 92 at 14-15) and deposition (id. at 36-48) to support his case, his

17  statements simply mirror the allegations of the complaint, which have been contradicted by all

18  other available evidence.

19         The facts are clear that plaintiff was on the ground through his own volition while

20  defendants were ordering him to submit to a strip search.  Furthermore, it is clear from the record

21  that plaintiff was handcuffed, lifted up and escorted to a holding cell for the strip search to take

22  place in private.  Two days later, plaintiff claimed to feel pain in his wrist, but medical

23  observation showed little or no abnormalities.

24          The evidence supports that defendants Morris and Zahniser justifiably handcuffed and

25  lifted plaintiff.  Further, correctional officers may apply reasonable force in a good faith effort to

26  restore discipline and order.  See, Whitley, 475 U.S. at 320-21. Therefore, the undersigned

27  recommends that defendants' motion for summary judgment concerning the Eighth Amendment

28  claims be granted.

1          **E.      Qualified Immunity Concerning Defendants Morris and Zahniser**

2                  Defendants argue that defendants Morris and Zahniser are entitled to qualified immunity

3    regarding the Fourth Amendment claims because there is no clearly established right that a

4    prisoner not be subject to unreasonable strip searches under the Fourth Amendment.

5                  Governmental officials performing discretionary functions generally are shielded from

6    liability in their individual capacities if the challenged conduct did not violate clearly established

7    statutory or constitutional rights of which a reasonable person would have known.[4]  Harlow v.

8    Fitzgerald, 457 U.S. 800, 818 (1982).  In determining whether a governmental officer is entitled

9    to qualified immunity, a court considers two questions.  One asks whether the facts alleged,

10   viewed in the light most favorable to the party asserting the injury, show the officer's conduct

11   violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  A negative answer

12   ends the analysis, with qualified immunity protecting the defendant from liability.  Id.

13                 If a constitutional violation occurred, a court also asks "whether the right was clearly

14   established."  Id.  "If the law did not put the [defendant] on notice that [his] conduct would be

15   clearly unlawful, summary judgment based on qualified immunity is appropriate."  Id. at 202.

16   The inquiry into whether a right was clearly established "must be taken in light of the specific

17   context of the case, not as a broad general proposition."  Id. at 201.  "[T]he right the official is

18   alleged to have violated must have been 'clearly established' in a more particularized, and hence

19   more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official

20   would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S.

21   635, 640 (1987).  A district court may decide the order of addressing the two prongs of its

22   qualified immunity analysis in accordance with fairness and efficiency and in light of the

23   circumstances of a particular case.  See Pearson v. Callahan, 555 U.S. 223, 236 (2009).

24                 As the undersigned established above in recommending the denial of defendants' motion

25   concerning the Fourth Amendment claims, the facts alleged, viewed in the light most favorable to

26   the party asserting the injury, raise a genuine question of material fact as to whether defendants

27   _____

28   [4]  Qualified immunity is not available to defendants sued in their official capacities.  Hallstrom v.
     City of Garden City, 991 F.2d 1473, 1482 (9th Cir. 1993).

                                                    19

1  conduct violated a constitutional right: the Fourth Amendment protection from unreasonable

2  searches.

3      Defendants argue that defendants Morris and Zahniser are entitled to qualified immunity

4  regarding the Fourth Amendment claims because there is no **clearly established** right in this

5  instance.

6      It is established that the Fourth Amendment protects prisoners from unreasonable searches

7  and seizures.  Michenfelder, 860 F.2d at 332 (strip searches that are excessive, vindictive,

8  harassing, or unrelated to any legitimate penological interest are not reasonable).  It is also clear

9  that prisoners retain a limited right to bodily privacy.  Michenfelder, 860 F.2d at 333.

10      Defendants assert that it is "not clearly established that having an insubordinate inmate

11  submit to an unclothed body search to find contraband would violate an inmate's Fourth

12  Amendment rights."  (ECF No. 84-1 at 19.)  This argument phrases the question improperly

13  however.  The issue before the court is whether the contours of the limited right to privacy and

14  the protection against unreasonable searches were sufficiently clear.  Thus, the court must query

15  whether the individual defendants could believe that strip searching an inmate for non-

16  penological purposes, such as retaliation, violated the Fourth Amendment rights of an inmate.

17  See Lopez v. Youngblood, 609 F. Supp. 2d 1125, 1144 (E.D. Cal. 2009).

18      Defendants are correct that a strip search of a plaintiff **to find contraband** does not

19  violate any clearly established right.  However, as the court recommends above, it is for the fact

20  finder to determine whether the search in this case was actually seeking contraband or was

21  undertaken in response to insubordination.  Because it is clearly established that prisoners have

22  limited Fourth Amendment rights, see Michenfelder, 860 F.2d at 332, defendants were on notice

23  that submitting inmates to strip searches for non-penological purposes is in violation of a clearly

24  established right.

25      Thus, the undersigned rejects the qualified immunity argument and recommends that the

26  district court deny defendants' motion for summary judgment on these grounds.

27  ////

28  ////

**IV.     Conclusion**

For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

1.      Plaintiff's motion for partial summary judgment (ECF No. 83) be denied;

2.      Defendants' motion for summary judgment (ECF No. 84) be granted in part and denied in part;

4.      Defendant Davis be entitled to summary judgment concerning plaintiff's Fourth Amendment claim and Eighth Amendment claim;

5.      Defendants Morris and Zahniser be entitled to summary judgment on plaintiff's Eighth Amendment excessive force claim;

6.      Defendants Morris and Zahniser be denied summary judgment on plaintiff's Fourth Amendment claim; and

7.      Defendants Morris and Zahniser not be granted qualified immunity concerning plaintiff's Fourth Amendment claim.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 7, 2017

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

TIM-DLB:10 DB / ORDERS / ORDERS.PRISONER.CIVIL RIGHTS / hard.0726.msj